UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| OCTAVIA EARL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09-CV-2171 |
| ) | |
| KANKAKEE COUNTY CORRECTIONAL ) | |
| OFFICERS CARPINTERO, EMMERSON, ) | |
| HERTZ, LESAGE, and LELAND DYER, ) | |
| ) | |
| Defendants. ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#26) filed by Defendants, Tina Carpintero,[1] Emerson Rushing,[2] Charles Hertz, Justin LeSage and Leland Dyer. This court has carefully considered the arguments of the parties and the exhibits filed. Following this careful and thorough consideration, Defendant's Motion for Summary Judgment (#26) is GRANTED.

## FACTS[3]

On December 25, 2008, shortly after midnight, Plaintiff, Octavia Earl, and her boyfriend, Quintin Williams, returned to the home they shared in Kankakee, Illinois. They

---

[1] This Defendant's name is spelled two different ways in the documents filed in this court, "Carpintero" and "Carpentero." This court will refer to her as "Carpintero."

[2] Plaintiff sued Defendant Emerson Rushing as Correctional Officer "Emmerson." This court will refer to him by his correct last name, "Rushing."

[3] The facts are taken from the Undisputed Material Facts listed by Defendants and the exhibits provided by the parties, including excerpts from deposition transcripts and video recordings. This court notes that Plaintiff disputed only three of the 64 facts listed by Defendants. This court will indicate the facts that are disputed. This court has only included facts which are material to the issues raised in this case.

were arguing and the argument escalated when they returned home. Plaintiff asked her son to call the police and he did so. Plaintiff consumed at least one beer before the argument and was drinking a beer when the police arrived. The police officers arrested Plaintiff and transported her to the Jerome Combs Detention Center (JCDC).[4] Officer Melvina Calvin escorted Plaintiff out of the squad car and into the booking area of JCDC.

The security camera in the pat down area of booking at JCDC records only video (no audio) on a DV-R when there is a significant change in pixalation in the frame, or in other words, when there is enough movement in the camera's field of vision to change a certain percentage of the pixalation. The security camera in the pat down area of booking began recording at 2:25 a.m. on December 25, 2008, and recorded all significant movements of the individuals until 2:38 a.m. The security video has a valid watermark and has not been altered in any way.

Correctional Officer Carpintero was called to booking to do a pat down search of Plaintiff because JCDC standard procedures require a female officer do the pat down of a female detainee when possible. When she arrived in booking, Carpintero went into the pat down area and saw Plaintiff, Correctional Officer Rushing, and Calvin. Carpintero observed Plaintiff speaking loudly and in a boisterous manner to Calvin, who was completing paperwork for Plaintiff's booking. Carpintero believed Plaintiff was intoxicated based upon Plaintiff's belligerent behavior and the smell of alcohol on her breath. Calvin also believed

---

[4] Plaintiff did not include any claims related to her arrest, so the facts related to her arrest are not material to this case.

Plaintiff was intoxicated and observed Plaintiff being belligerent and loud. Carpintero got the supplies necessary to do a pat down search and to secure Plaintiff's property.

Carpintero approached Plaintiff and told her that she was going to conduct a pat down search. Carpintero then began to pat down the front of Plaintiff's body while she was still in handcuffs. Correctional Officer LeSage entered the pat down area of booking and sat down in a chair on the side of the room. The security camera stopped recording for 13 seconds between 2:27:28 and 2:27:41 a.m. because there was no significant movement in the room. Carpintero began removing Plaintiff's handcuffs to do a more thorough search of Plaintiff's person and ordered Plaintiff to put her hands on the counter. Once one arm was free of the handcuffs, Plaintiff began striking the counter with her freed hand. At the time, Carpintero believed that Plaintiff was a threat because she wanted to fight and was intoxicated. The security camera stopped recording for 42 seconds between 2:28:57 and 2:29:39 a.m. because there was no significant movement in the room.

Carpintero ordered Plaintiff to take her rings off and provided her with hand sanitizer to assist in removing them. Plaintiff could not get one of the rings off, and Carpintero assisted Plaintiff in removing it. The security camera stopped recording for 8 seconds because there was no significant movement in the video screen. During her deposition, Plaintiff testified that Carpintero punched her on the right side of her face multiple times after removing her ring, but the security camera does not show any punches or blows.

Carpintero patted down the back of Plaintiff's jacket and asked Plaintiff to remove it at least once. Carpintero removed Plaintiff's jacket when Plaintiff did not comply with the

order. Carpintero ordered Plaintiff to "turn around; don't look at me" at least once. Calvin recalled Plaintiff refusing to obey orders to keep her hands on the counter multiple times. Plaintiff refused to comply with Carpintero's order to face forward and turned around several times. Carpintero pushed Plaintiff's head forward with an open palm to keep her facing away from Carpintero. Correctional Officers Hertz and Dyer then arrived at the pat-down area. LeSage, Hertz and Dyer testified that they thought Plaintiff, through her verbal and physical conduct, posed a threat to their safety and the safety of the jail.

Carpintero testified that, throughout the booking process, she believed that Plaintiff posed a threat to her safety because she was belligerent, intoxicated and stated that "she was going to do something." Plaintiff has disputed this fact, arguing that Carpintero's testimony is belied by the fact that Carpintero removed Plaintiff's handcuffs. Carpintero continued the pat down search, and Plaintiff continued to turn towards Carpintero and move her body backwards into Carpintero. Carpintero pushed Plaintiff's head forward so she could safely finish the pat down search. Once Plaintiff kept her head and body facing forward, Carpintero finished patting Plaintiff down. While Carpintero searched Plaintiff's pants, Plaintiff banged her hands on the counter. Carpintero then stepped back and ordered Plaintiff to remove her boots at least twice. Dyer testified that it is important to have detainees remove their shoes or boots during a pat down search so that the officers can make sure they are not hiding any contraband, such as weapons or drugs, in their shoes or boots. When detainees smuggle contraband into JCDC, it is common for them to hide the contraband in their shoes or boots.

Plaintiff refused the order to take off her boots and then told Carpintero to take them

4

off for her. Carpintero turned toward Hertz and requested his taser. She asked for the taser with the prongs removed which allowed the taser to be used in the drive-stun mode. Carpintero testified that she was trained and certified in taser use and authorized to carry and use a taser at JCDC. Plaintiff has disputed this fact because Carpintero's certification was dated March 3, 2006, and stated that it was good for one year. Hertz handed Carpintero the taser on his belt. Carpintero pointed the taser at Plaintiff and gave Plaintiff at least one more order to take off her boots. Carpintero testified that she placed the taser on Plaintiff's back and told Plaintiff that she would get tased if she did not comply with the order. Plaintiff did not comply with the order and Carpintero deployed the taser in drive-stun mode against Plaintiff. Once a taser is activated, it remains active for a five second cycle and taking a finger off the trigger does not de-activate it during the five second period.

    Plaintiff fell back from the taser and slid to the floor. Rushing guided Plaintiff's head to the floor. When Plaintiff fell back, she broke contact with the taser and Carpintero moved forward to reestablish contact. Carpintero used the taser only once. After the taser was used, Plaintiff stood up and complied with Carpintero's order to remove her boots. Carpintero kept the taser pointed at Plaintiff while she removed her boots and kicked one of the boots across the room. Carpintero returned the taser to Hertz and patted down Plaintiff's feet, finishing the search without incident. Plaintiff was then taken to a cell. According to Defendants, neither Carpintero nor any other officer ever punched, hit, kicked or otherwise struck Plaintiff during the entire search. Plaintiff has disputed the portion of this statement that says that Carpintero never struck Plaintiff. Plaintiff pointed out that Carpintero testified that she

pushed Plaintiff's head three times. Plaintiff did not dispute that she was never punched, hit or kicked.

## PROCEDURAL HISTORY

Plaintiff filed a Complaint (#1) in this court on July 14, 2009. On February 1, 2010, Plaintiff filed an Amended Complaint (#11). Plaintiff alleged that she was subjected to excessive force while being booked at JCDC "in that she was beaten about her face, head and upper body, violently manhandled and tasered multiple times." Plaintiff's Amended Complaint included four counts. Count I was a claim of excessive force against Carpintero brought pursuant to 42 U.S.C. § 1983, alleging a violation of her Fourth Amendment rights. Count II was a state law claim against Carpintero for intentional infliction of emotional distress. Count III was a state law claim against Carpintero for battery. Count IV was a claim against Defendants Rushing, Hertz, LeSage and Dyer brought pursuant to 42 U.S.C. § 1983. Plaintiff alleged that these Defendants failed to intercede on Plaintiff's behalf and prevent the violation of her constitutional rights by Carpintero.

On September 12, 2011, Defendants filed a Motion for Summary Judgment (#26) and a Memorandum in Support with attached exhibits (#27). Defendants also filed, conventionally, two security camera video recordings (#29). On October 20, 2011, Plaintiff filed her Response to Defendants' Motion for Summary Judgment (#31), with attached exhibits. On November 3, 2011, Defendants filed their Reply (#34).

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); O'Leary v. Accretive Health, Inc., 657 F.3d 625, 630 (7th Cir. 2011).

However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Where a videotape exists and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened[,]" a court must view "the facts in the light depicted by the videotape." Scott, 550 U.S. at 378-81. If it is clear, based upon the undisputed facts, that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only proper, but mandated. See Celotex, 477 U.S. at 322; Padula v. Leimbach, 656 F.3d 595, 600-01 (7th Cir. 2011).

DEFENDANTS' MOTION

Defendants have argued that they are entitled to summary judgment based upon the undisputed facts in this case. Defendants argued that the two video camera recordings of Plaintiff's booking show that force was used against Plaintiff only twice and that neither use of force was excessive. Defendants argued that the first use of force was when Carpintero pushed Plaintiff's head and body so that she faced forward, away from Carpintero, after Plaintiff disobeyed at least one order to face forward. Defendants argued that this use of force is *de minimis* and does not state a claim, citing Dewalt v. Carter, 224 F.3d 607 (7th Cir. 2000). Plaintiff disputed Defendants' statement that no officer punched, hit, kicked or otherwise struck Plaintiff, noting that Carpintero testified she pushed Plaintiff's head three times. Plaintiff did not, however, argue that this use of force was not *de minimis*. This court concludes that the video evidence blatantly contradicts Plaintiff's original claim that she was "beaten about her face, head and upper body," and "violently manhandled." This court also concludes that the pushing shown on the video cannot be considered excessive force under the circumstances here. A claim cannot generally be predicated upon a *de minimis* use of physical force; thus, not every push or shove violates a prisoner's constitutional rights. See Hudson v. McMillian, 503 U.S. 1, 9-10 (1992); DeWalt, 224 F.3d at 619-20.

Defendants next argued that the second use of force occurred when Carpintero deployed a taser in drive-stun mode for one cycle, which made contact with Plaintiff for less than five seconds, after Plaintiff disobeyed orders to remove her boots. Defendants argued that this single use of a taser was a good faith effort to maintain or restore discipline and was not excessive, citing Forrest v. Prine, 620 F.3d 739 (7th Cir. 2010). In her Response, Plaintiff

argued that Carpintero could not have felt threatened by Plaintiff since she removed Plaintiff's handcuffs. Plaintiff also argued that Forrest is distinguishable because, in Forrest, the plaintiff had attacked a police officer earlier that day, stood facing the officer with hands clenched, was larger than the officer and was confined in a small area with a lone officer. See Forrest, 620 F.3d at 741-42.

Although Plaintiff brought her excessive use of force claim under the Fourth Amendment, Plaintiff was a pretrial detainee and, therefore, the Fourteenth Amendment right to due process is the proper constitutional right at issue. See Forrest, 620 F.3d at 743-44. "The Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." Forrest, 620 F.3d at 744. Accordingly, "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." Lewis v. Downey, 581 F.3d 467, 475 (7th Cir. 2009). The Seventh Circuit has, therefore, borrowed Eighth Amendment standards to analyze a claim of excessive force by a pretrial detainee during the booking process. See Forrest, 620 F.3d at 744. The court stated that "[t]he 'unnecessary and wanton infliction of pain' on a prisoner violates his rights under the Eighth Amendment." Forrest, 620 F.3d at 744, quoting Lewis, 581 F.3d at 475. "Force used in 'a good-faith effort to maintain or restore discipline,' does not rise to the level of being unnecessary and wanton." Forrest, 620 F.3d at 744, quoting Hudson, 503 U.S. at 7. "Only force intended 'maliciously and sadistically' to cause harm to the prisoner falls under that standard." Forrest, 620 F.3d at 744, quoting Hudson, 503 U.S. at 7.

In <u>Forrest</u>, the Seventh Circuit decided a case with somewhat similar facts. The plaintiff in <u>Forrest</u> refused to remove his underwear for a strip search. <u>Forrest</u>, 620 F.3d at 741. The defendant, Officer Prine, warned the plaintiff that he would deploy the taser if the plaintiff did not comply with the strip search commands. The plaintiff responded by calling the officers names and using expletives. The plaintiff eventually removed his underwear but would not comply with the rest of the strip search commands. The plaintiff began pacing back and forth and remained 7-10 feet away from Officer Prine. Officer Prine repeatedly told the plaintiff that unless he complied with the strip search commands, he would use the taser. Officer Prine finally employed the taser on the plaintiff. <u>Forrest</u>, 620 F.3d at 742. The plaintiff "bent down" or "ducked" when the taser was deployed. One taser discharge hit the plaintiff's face, near his eye, and another dart struck his arm. <u>Forrest</u>, 620 F.3d at 742. The plaintiff fell and struck his face against the back wall of the holding cell, injuring his cheekbone. <u>Forrest</u>, 620 F.3d at 742.

The plaintiff sued and the district court granted summary judgment for Officer Prine, finding that no genuine issue of material fact existed as to whether he had used excessive force. <u>Forrest</u>, 620 F.3d at 742. The Seventh Circuit affirmed. The court noted that the plaintiff did not dispute that he appeared to be intoxicated and, consequently, Officer Prine reasonably could have perceived him as acting unpredictably. <u>Forrest</u>, 620 F.3d at 745. The court concluded that the plaintiff posed an immediate threat to safety and order within the jail so that the use of a taser constituted a permissible use of force. <u>Forrest</u>, 620 F.3d at 745.

In this case, as well, Plaintiff has not disputed that she appeared intoxicated and was

belligerent and loud. Further, Plaintiff has not disputed that the officers in the booking area, other than Carpintero, thought Plaintiff posed a threat to their safety and the safety of the jail. Plaintiff has only disputed that Carpintero believed that Plaintiff posed a threat to her safety, arguing that Carpintero would not have removed Plaintiff's handcuffs if she felt threatened. However, Plaintiff did not dispute that, at the time Carpintero removed one of Plaintiff's hands from the handcuffs to continue the pat down search, Carpintero believed that Plaintiff was a threat because she wanted to fight and was intoxicated. In addition, Plaintiff did not dispute that she refused to follow Carpintero's orders before the taser was used. Moreover, it is undisputed that the taser was deployed only once and was used in drive-stun mode. In this mode, the operator presses the taser to a subject's body and then pulls the trigger to emit a current and the deployment lasts for a maximum duration of five seconds. See Cyrus v. Town of Mukwonago, 624 F.3d 856, 859 n.1 (7th Cir. 2010). The use of a taser in drive-stun mode causes temporary, localized pain in contrast to the use of a taser in dart mode which involves embedding a barbed electrical probe into the person's body and causes muscular contractions and more severe pain. See Brooks v. City of Seattle, 599 F.3d 1018, 1026-28 (9th Cir. 2010).

  This court agrees with Defendant that the undisputed facts show that Plaintiff was ignoring Carpintero's repeated commands and was not subjected to unreasonable force when the taser was deployed. See Forrest, 620 F.3d at 745-47. Although Plaintiff is correct that there are some factual distinctions between the situation in Forrest and the situation in this case, this court concludes that, based upon the record, Carpintero's use of the taser in drive-

stun mode was a reasonable, good faith effort to maintain or restore discipline at JCDC. See Forrest, 620 F.3d at 747. There is simply no genuine issue of triable fact as to whether Carpintero's use of the taser amounted to a violation of the due process clause of the Fourteenth Amendment because no reasonable jury would conclude that Carpintero fired the taser with a malicious or sadistic intent. See Forrest, 620 F.3d at 747; see also Dishman v. Cleary, 2011 WL 1261098, at *9-10 (N.D. Ill. 2011) (use of taser was "both reasonable and constituted a good-faith effort to restore order").[5]

Defendants also argued that the remaining Defendants are entitled to summary judgment on Plaintiffs' § 1983 failure to intervene claim because there was no underlying

---

[5] This court notes that Plaintiff has asked this court to follow the decision of the Ninth Circuit Court of Appeals in Bryan v. McPherson, 590 F.3d 767 (9th Cir. 2009). In Bryan, the court found that the use of a taser in dart mode to gain compliance with a command, absent a real threat or risk of danger, violated the plaintiff's right to be free from excessive force. Bryan, 590 F.3d at 779-81. However, Defendants have pointed out that this decision was superseded by Bryan v. MacPherson, 630 F.3d 805 (9th Cir. 2010). The Ninth Circuit concluded that the officer was entitled to qualified immunity because a reasonable officer confronting the circumstances he faced could have made a reasonable mistake of law in believing the use of the taser was reasonable. Bryan, 630 F.3d at 833.

Plaintiff has also cited cases from other jurisdictions, including the decision of the Tenth Circuit Court of Appeals in Cavanaugh v. Woods Cross City, 625 F.3d 661 (10th Cir. 2010). In Cavanaugh, the court found that the use of a taser "against a non-violent misdemeanant who appeared to pose no threat and who was given no warning" was unconstitutional excessive force. Cavanaugh, 625 F.3d at 666-67. Plaintiff has conceded, however, that the Seventh Circuit in Forrest concluded that a taser may be used to gain compliance with an officer's orders. Plaintiff argued that Forrest should not be followed because it is distinguishable and is "bad law" which "is ripe to be overturned." This court concludes, however, that the factual differences between this case and Forrest are not sufficiently significant to require a different outcome. And, obviously, this court cannot ignore or decline to follow Seventh Circuit precedent on this issue. This court must follow the decisions of the Seventh Circuit Court of Appeals. "In a hierarchical system, decisions of a superior court are authoritative on inferior courts." Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004); see also Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005). Therefore, this court must follow the Seventh Circuit's decision in Forrest whether or not it agrees. See Reiser, 380 F.3d at 1029.

constitutional violation, citing Fillmore v. Page, 358 F.3d 496, 506 (7th Cir. 2004). Plaintiff conceded that if this court concludes that Carpintero's conduct was justifiable, then it follows that the remaining Defendants had no duty to intervene. This court therefore agrees with Defendants that there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention. See Fillmore, 358 F.3d at 506.

In any case, this court concludes that all of the Defendants are entitled to qualified immunity. Defendants argued that they are entitled to qualified immunity on Plaintiff's claims under § 1983 because a reasonable correctional officer would have believed that the force used here did not violate the United States Constitution. Plaintiff did not respond to this argument. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This court concludes that the one-time use of a taser on Plaintiff in drive-stun mode when Plaintiff was not complying with Carpintero's order to remove her boots did not violate clearly established law. See Pearson, 555 U.S. at 243. Accordingly, Carpintero and the other Defendants are clearly entitled to qualified immunity and summary judgment in their favor is warranted for this reason as well.

Defendants finally argued that Carpintero is entitled to summary judgment on Plaintiff's state law claims for intentional infliction of emotional distress and battery. Defendants argued that the force used was a lawful attempt to restore discipline and enforce

compliance with her orders and was neither extreme and outrageous nor the result of an intent to cause Plaintiff emotional harm. See Henderson v. Hartshorn, 2011 WL 11464, at *6 (C.D. Ill. 2011) (correctional officers attempting to restrain inmate did not commit the tort of battery because they were in the midst of a lawful act in maintaining security at the county jail); Harper v. Mega, 1998 WL 473427, at * (N.D. Ill. 1998) (intentional infliction of emotional distress claim dismissed where the plaintiff failed to allege sufficient facts or the necessary degree of outrageousness to state a claim). Plaintiff did not respond to this argument and this court agrees that Carpintero is entitled to summary judgment on Plaintiff's state law claims.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#26) is GRANTED. Judgment is entered in favor of Defendants and against Plaintiff on Plaintiff's Amended Complaint (#11).

(2) This case is terminated. The final pretrial conference scheduled on January 27, 2012, at 2:30 p.m. and the jury trial scheduled on February 6, 2012, at 9:00 a.m. are hereby VACATED.

ENTERED this 16th day of November, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE